UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY, | ) ) ) |
| Plaintiff(s), | ) ) |
| vs. | ) ) Case No. 4:08CV1440 JCH |
| INTEK CORPORATION, et al., | ) ) ) |
| Defendant(s). | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff The Cincinnati Insurance Company's Motion for Summary Judgment, filed October 5, 2009, and Defendant Intek Corporation's Motion for Summary Judgment on its Counterclaim, filed November 2, 2009. (Doc. Nos. 77, 83).

## BACKGROUND

The procedural history of this matter is as follows: On August 1, 2003, Plaintiff The Cincinnati Insurance Company ("Cincinnati Insurance") issued a Commercial General Liability Coverage Form (the "policy") insuring Defendant Intek Corporation ("Intek"). (Statement of Material Facts in Support of Motion for Summary Judgment by the Cincinnati Insurance Company ("Statement of Material Facts"), ¶ 1). The policy was effective through August 1, 2006. (Id.). On or about December 26, 2005, a Quick Silver Heater Warming Plate ("warming plate"), designed, manufactured, distributed and sold by Intek, allegedly malfunctioned and ignited. (Id., ¶ 10). The resultant fire caused damage to property owned by Defendants James Lougeay, Russell Enterprises, and Fashion Bug. (Id.).

Defendant Lougeay, by Defendant United Fire & Casualty Company as subrogee, filed a Petition in the Circuit Court of the City of St. Louis, Missouri, against Intek and Defendant Domino's

Pizza, L.L.C. ("Domino's"). (Statement of Material Facts ¶ 5, and attached Exh. 2). Lougeay's Petition subsequently was transferred to the Circuit Court of Franklin County, Missouri, where it remains pending. (Id., ¶ 6). Lougeay's Petition asserts five causes of action against Intek related to the December 26, 2005, fire and the designing, manufacturing, marketing, distributing, and selling of the warming plates, as follows: Strict Liability; Strict Liability—Failure to Warn; Product Liability Negligence; Breach of Implied Warranty of Merchantability; and Violation of the Magnuson Moss Act. (Id., ¶ 11).

On or about June 20, 2008, Defendant Illinois Casualty Company, as subrogee of Defendant Russell Enterprises, LTD, filed a First Amended Complaint ("Complaint") in the Circuit Court of Monroe County, Illinois, against Defendants Covertex Corporation ("Covertex"), Domino's, Innovative Equipment Service, Inc. ("Innovative Equipment"), and Intek. (Statement of Material Facts, ¶ 7, and attached Exh. 3).[1] With respect to Intek, Illinois Casualty Company's Complaint asserts three causes of action related to the December 26, 2005 fire and the designing, manufacturing, marketing, distributing, and selling of the warming plates, as follows: Negligence; Strict Liability; and Breach of Warranty. (Id., ¶12).

On or about March 27, 2009, Defendant Hartford Fire Insurance Company ("Hartford"), as subrogee of Defendant Fashion Bug, filed a Complaint in Intervention as part of Illinois Casualty's Complaint in the Circuit Court of Monroe County, Illinois, against Defendants Covertex, Innovative Equipment, Intek and Russell Enterprises. (Statement of Material Facts, ¶ 8, and attached Exh. 4). Hartford's Complaint in Intervention alleges Strict Product Liability against Intek related to the December 26, 2005, fire, and the manufacturing and distributing of the warming plates.

Defendant Intek has called upon Cincinnati Insurance to provide coverage under the policy

---

[1] The Illinois Casualty case currently remains pending.

in response to the Lougeay Petition, the Illinois Casualty Complaint, and the Hartford Complaint in Intervention. (Cincinnati Insurance's First Amended Complaint for Declaratory Judgment, ¶ 32). On May 18, 2009, Cincinnati Insurance brought its First Amended Complaint for Declaratory Judgment against Defendant Intek and others in this Court, seeking a declaration that the above referenced Commercial General Liability policy provides no coverage to Intek for any matters or damages alleged in Lougeay's Petition, Illinois Casualty's Complaint, or Hartford's Complaint in Intervention. (Id., PP. 8-9). Specifically, Cincinnati Insurance seeks a declaration that it has no duty or obligation to defend and/or indemnify Intek, as to the allegations and claims set forth in the underlying lawsuits. (Id.).

The liability policy at issue states in pertinent part as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**PART DECLARATIONS**

**LIMITS OF INSURANCE**

| | |
|---|---|
| EACH OCCURRENCE LIMIT | $1,000,000 |
| GENERAL AGGREGATE LIMIT | $2,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $EXCLUDE |
| PERSONAL AND ADVERTISING INJURY LIMIT | $1,000,000 |

**SECTION I—COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

**SECTION III—LIMITS OF INSURANCE**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**SECTION V—DEFINITIONS**

**19.** **"Products-completed operations hazard":**

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1) Products that are still in your physical possession; or

        (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            (a) When all of the work called for in your contract has been completed; or

            (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

            (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**20.** **"Property damage" means:**

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

### EXCLUSION—PRODUCTS—COMPLETED OPERATIONS HAZARD

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART.**

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard."

(Doc. No. 78-2, Commercial General Liability Coverage Form, PP. 27, 29, 40, 43, 46-47, 65).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Id. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

The interpretation of an insurance policy is governed by state law. American Family Mut. Ins. Co. v. Co Fat Le, 439 F.3d 436, 439 (8th Cir. 2006). "Under Missouri law, the insured has the burden of proving coverage, and the insurer has the burden of proving that an insurance policy exclusion applies." Id. (citation omitted). The words of a policy are given their ordinary meaning, unless it is obvious that a technical meaning was intended, and ambiguous language is construed against the insurer. Gateway Hotel Holdings, Inc. v. Lexington Ins. Co., 275 S.W.3d 268, 275 (Mo. App. 2008). "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract." Peters v. Employers Mut. Cas. Co., 853 S.W.2d 300, 302 (Mo. banc 1993) (citation omitted). However, "[m]ere disagreement by the parties regarding a contract term's interpretation does not render the term ambiguous." Lindsay v. Safeco Inc. Co., 447 F.3d 615, 617 (8th Cir. 2006) (citation omitted). The insurance contract is to be examined as a whole to determine whether ambiguities exist in the language of the policy. Gateway Hotel Holdings, 275 S.W.3d at 275 (citation omitted).

In its Motion for Summary Judgment, Plaintiff Cincinnati Insurance contends that it bears no duty to defend or indemnify Intek against any claims arising from the December, 2005 fire, because any liability connected with the defective warming plate is excluded under the insurance contract's "Products-Completed Operations Hazard" provision. Upon consideration of the terms of the policy at issue the Court agrees, for two reasons. First, as noted above, the policy defines "products-completed operations hazard" as follows:

> Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> (1) Products that are still in your physical possession; or
>
> (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

> (a) When all of the work called for in your contract has been completed; or
>
> (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or
>
> (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

(Doc. No. 78-2, Commercial General Liability Coverage Form, PP. 46-47). It is undisputed that the fire that is the subject of the underlying lawsuits occurred away from premises owned or rented by Intek, and that the Quick Silver Heater Warming Plate was not in Intek's physical possession at the time the subject fire loss occurred. (Statement of Material Facts, ¶¶ 27, 28, citing Plaintiff's Request for Admissions to Intek, Nos. 9, 10, and Intek's Response, attached Exh. 7). The Court thus finds the underlying claims fall within the products-completed operations hazard. With respect to coverage for this hazard, the policy provides as follows: "The Products-Completed Operations Aggregate Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of 'bodily injury' and 'property damage' included in the 'products-completed operations hazard.'" (Doc. No. 78-2, Commercial General Liability Coverage Form, P. 40). Under the policy declarations, however, the aggregate limit for products-completed operations is zero. (Id., P. 27).

As further support for its ruling, the Court notes that a specific exclusion in the policy provides as follows: "This insurance does not apply to 'bodily injury' or 'property damage' included within the 'products-completed operations hazard.'" (Doc. No. 78-2, Commercial General Liability Coverage Form, P. 65). "Products-completed operations hazard" exclusions are common provisions in commercial general liability policies. Liberty Mut. Fire Ins. Co. v. Flexo Supply Co., Inc., No.

4:05CV896, 2007 WL 6083068 at *5 (E.D. Mo. June 26, 2007). Furthermore, contracts with exclusions nearly identical to the one in question in the instant case routinely have been found unambiguous by Missouri courts.[2] *See* Hawkeye-Security Ins. Co. v. Davis, 6 S.W. 3d 419, 424-25 (Mo.App. 1999); Cincinnati Ins. Co. v. Television Eng'g Corp., 265 F. Supp. 2d 1078, 1081 (E.D. Mo. 2003). For these reasons, there exists no coverage under the policy for Intek in the underlying lawsuits, and so Cincinnati Insurance's Motion for Summary Judgment must be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff The Cincinnati Insurance Company's Motion for Summary Judgment (Doc. No. 77) is **GRANTED**, and judgment is entered in favor of Cincinnati Insurance and against Defendants with respect to Cincinnati Insurance's claim it has no duty to defend or indemnify Intek Corporation in the underlying suits. A Separate Judgment will accompany this Order.

**IT IS FURTHER ORDERED** that Defendant Intek Corporation's Motion for Summary Judgment on its Counterclaim (Doc. No. 83) is **DENIED**.

Dated this 24th day of February, 2010.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[2] Where ambiguity has been found by Missouri courts in similar cases, the insurance contract "promises something at one point and takes it away at another…." Behr v. Blue Cross Hosp. Service, Inc., 715 S.W. 2d 251, 256 (Mo. banc 1986). Here, the aggregate limit of coverage for "products-completed operations hazard" present in the declarations section of the insurance contract is listed as "excluded." Nothing in the language cited by Intek, when read together with all relevant provisions contained within the contract, leads to the conclusion that coverage is provided for liability arising from completed products.